## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| REX MEDICAL, L.P., | |
| Plaintiff, | CIVIL ACTION NO. 6:24-cv-00556 |
| v. | |
| ETHICON, INC., ETHICON ENDO-SURGERY, INC., and ETHICON US, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Rex Medical, L.P. ("Rex Medical" or "Plaintiff") asserts claims against Ethicon, Inc., Ethicon Endo-Surgery, Inc., and Ethicon US, LLC (collectively, "Ethicon" or "Defendants") for infringement of U.S. Patent Nos. 9,439,650 ("the '650 Patent"), 10,136,892 ("the '892 Patent") and 10,675,033 ("the '033 Patent") (collectively, "the Asserted Patents"). Rex Medical alleges as follows:

### I.    NATURE OF THE ACTION

1.    This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

### II.    THE PARTIES

2.    Rex Medical is a limited partnership organized and existing under the laws of Pennsylvania with its principal place of business at 555 North Lane, Suite 5035, Conshohocken, PA 19428.

3.    Defendant Ethicon, Inc. ("Ethicon, Inc.") is a corporation formed under the laws of New Jersey, with a principal place of business located at 1000 Route 202, Raritan, NJ 08869.

Ethicon, Inc. is a wholly owned subsidiary of Johnson & Johnson. Ethicon, Inc. makes and sells surgical devices and other products, including certain surgical devices that Plaintiff contends practice claims of the Asserted Patents. Ethicon, Inc. owns and/or operates facilities in the United States, including in San Angelo, Texas and Cornelia, Georgia, where steps in the production of such products take place. Ethicon, Inc. is registered with the Texas Secretary of State to conduct business in Texas and may be served with process through its registered agent, CT Corporation System, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.     Defendant Ethicon US, LLC ("Ethicon US"), is a limited liability company formed under the laws of Delaware, with a principal place of business located at 1000 Route 202, Raritan, NJ 08869. Ethicon US markets, sells, and supports the sale and use of Ethicon products, including certain surgical devices that Plaintiff contends practice claims of the Asserted Patents. Ethicon US publishes websites and other media intended to support the sale of Ethicon products and enable use of the same by healthcare professionals and others in the United States. Ethicon US is registered with the Texas Secretary of State to conduct business in Texas and may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

5.     Defendant Ethicon Endo-Surgery, Inc. ("Ethicon ESI") is a corporation organized under the laws of Ohio, with a principal place of business located at 4545 Creek Road, Cincinnati, OH 45242. Ethicon ESI owns and/or operates facilities in the United States, including in this District with an address at 425 Pan American Dr., El Paso Texas 79907. Ethicon ESI is registered with the Texas Secretary of State to conduct business in Texas and may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

### III.    JURISDICTION AND VENUE

6.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code, in particular 35 U.S.C. §§ 271, 281, 284, and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7.    This Court has personal jurisdiction over Defendants and venue is proper in this Court pursuant to 28 U.S.C. § 1391(c).

### IV.    BACKGROUND

<u>Rex Medical and its Tissue Sealing Inventions</u>

8.    Rex Medical was co-founded by Dr. James F. McGuckin Jr., M.D. in 1996 to further the development of life-changing medical devices.

9.    Rex Medical specializes in the development, manufacturing, and marketing of innovative, minimally invasive medical devices. Rex Medical targets its devices toward the cardiovascular, venous access, endosurgery, and oncology markets.

10.    Rex Medical is ISO Certified.

11.    Rex Medical's current President is Lindsay L. Carter. Mr. Carter joined Rex Medical in 2001 and was named President of the company in 2009.

12.    Rex Medical's mission has been, and remains, to improve patients' results through technological innovations.

13.    Rex Medical is a pioneer in the medical device field, and as a consequence of its research and development owns several U.S. and foreign patents, including the Asserted Patents. The named inventors of the Asserted Patents are Dr. James F. McGuckin, Jr. and Peter W.J. Hinchliffe.  Like Dr. McGuckin, Mr. Hinchliffe helped oversee the formation and development of Rex Medical, serving as Vice President of Research and Development from 1999-2002.

14.    Rex Medical has made several important innovations in addition to the patents pertinent to this litigation, including those embodied in the Closer™ Vascular Sealing System, the Revolution™ Peripheral Atherectomy System, and the SplitWire™ Percutaneous Transluminal Angioplasty Scoring Device. Rex Medical has patents pending related to each of these innovations. Additionally, Rex Medical currently distributes the Quadra-Fuse™ Multi-Pronged Injection Needle in partnership with Sillajen, a company focused on attacking and eradicating cancers.

<u>Rex Medical's Tissue Sealing Patents</u>

15.    Rex Medical owns the Asserted Patents, which relate to Rex Medical's development of an apparatus and method for sealing tissue during surgery. More specifically, Rex Medical developed a surgical device and method for sealing tissue that can be used for a variety of surgical procedures.

16.    The need to remove parts or all of a tissue or organ can arise from a variety of reasons, including but not limited to gastro-esophageal lesions, stomach reduction, and gastro-esophageal reflux. The process of surgically removing parts of the tissue or organ is known as resection.

17.    During a resection, the targeted tissue must be surgically cut away from the non-targeted tissue (*i.e.*, the tissue that is to remain in the body) to remove the targeted tissue. There is thus a simultaneous need to seal the targeted tissue, so fluids from the targeted tissue do not leak as the tissue is removed from the body, and the non-targeted tissue, so the remaining tissue is not left open and exposed.

18.    During a resection, a device used to grasp the targeted tissue may be needed to pull the targeted tissue away from the surrounding tissue, organs, and structures so the cutting and sealing devices can be used.

19.     Rex Medical invented and designed surgical devices that can both cut and seal (*e.g.*, stapling, cauterizing, etc.) tissue almost simultaneously. These devices are particularly useful in laparoscopic surgery, also known as minimally invasive surgery. These devices are described in and covered by the Asserted Patents.

20.     The Asserted Patents are directed to apparatuses and methods for sealing tissue during resection.  The apparatus includes, for example, an operative head comprising a pair of opposed tissue clamping jaws, which are moveable with respect to one another, holding one position when preparing to receive the targeted tissue, and a different, closed position when clamping the targeted tissue to cut and staple it.  One of the jaws includes a stapling mechanism, which pushes the staple through the targeted tissue, and the other jaw includes a staple forming anvil surface, which molds the staple's shape once the staple passes through the targeted tissue. The stapling mechanism includes slots through which staples are fired and which are arranged in a row extending from a proximal end of the first jaw to a distal end of the first jaw.  This first jaw works in combination with a control handle that remains outside the patient, even when the operative head is operating within the patient's stomach and esophagus.  The control handle can include one or more actuators for moving the jaws relative to one another and for operating the stapling mechanism.

21.     The '892 Patent and the '033 Patent are also directed to apparatuses and methods for sealing tissue.  The apparatus includes, for example, an operative head comprising a pair of opposed tissue clamping jaws, which are moveable with respect to one another, a beam, a pusher and a control handle.  The control handle can include one or more actuators for moving the jaws relative to one another and for operating the sealing mechanism.

22.     Through the above-described operation, the Asserted Patents enable the efficient sealing of cut tissue during resection.

## V.     PATENTS

### The '650 Patent

23.     Rex Medical is the assignee and owner of the right, title, and interest in and to the '650 Patent, including the right to assert all causes of action arising under the '650 Patent and the right to any remedies for infringement of them.

24.     The '650 Patent, entitled "Apparatus and Method for Resectioning Gastro-Esophageal Tissue," was issued by the United States Patent and Trademark Office on September 13, 2016.  The '650 Patent issued from United States Patent Application No. 15/018,000 and claims priority to United States Provisional Application No. 60/265,469 ("the '469 Application"), filed on January 31, 2001.  A copy of the '650 Patent is attached as Exhibit A.

25.     The inventions of the '650 Patent are generally directed to a tissue stapling device that has two jaws to clamp targeted tissue and pass staples into the clamped tissue.

26.     The '650 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

27.     The patentability of the asserted claims of the '650 Patent was confirmed at the Patent Trial and Appeal Board in an *inter partes* review proceeding.  *See* IPR2020-00152.

### The '892 Patent

28.     Rex Medical is the assignee and owner of the right, title, and interest in and to the '892 Patent, including the right to assert all causes of action arising under the '892 Patent and the right to any remedies for infringement of them.

29.    The '892 Patent, entitled "Apparatus and Method for Resectioning Gastro-Esophageal Tissue," was issued by the United States Patent and Trademark Office on November 27, 2018. The '892 Patent issued from United States Patent Application No. 15/617,835, filed on June 8, 2017, and claims priority to the '469 Application, filed on January 31, 2001. A copy of the '892 Patent is attached as Exhibit B.

30.    The inventions of the '892 Patent are generally directed at tissue stapling devices and other sealers that have two jaws to clamp targeted tissue and pass staples into the clamped tissue or seal tissue using other means (*e.g.*, cauterization).

31.    The '892 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

<u>The '033 Patent</u>

32.    Rex Medical is the assignee and owner of the right, title, and interest in and to the '033 Patent, including the right to assert all causes of action arising under the '033 Patent and the right to any remedies for infringement of them.

33.    The '033 Patent, entitled "Apparatus and Method for Resectioning Gastro-Esophageal Tissue," was issued by the United States Patent and Trademark Office on June 9, 2020. The '033 Patent issued from United States Patent Application No. 16/185,506, filed on November 9, 2018, and claims priority to the '469 Application, filed on January 31, 2001. A copy of the '033 Patent is attached as Exhibit C.

34.    The inventions of the '033 Patent are generally directed at tissue stapling devices and other sealers that have two jaws to clamp targeted tissue and pass staples into the clamped tissue or seal tissue using other means (*e.g.*, cauterization).

35.     The '033 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

## VI.     INFRINGING PRODUCTS

36.     Ethicon makes, uses, sells, offers for sale, and/or imports surgical staplers including the ECHELON™+ Powered  Stapler, ECHELON FLEX™ Powered Vascular Stapler with Advanced Placement Tip, ECHELON FLEX™ ENDOPATH™ Stapler ("Staplers") and reload cartridges ("Reload Cartridges"). The Staplers and Reload Cartridges, and any and all other surgical staplers and reload cartridges that operate in a substantially similar manner shall be referred to as the "Accused Stapler Products."

37.     The Accused Stapler Products are used in several common surgeries performed in the United States and in this District, including bariatric surgery, thoracic surgery, and colorectal surgery.

38.     Bariatric surgeries, such as gastric bypass and other types of weight-loss surgery, involve making physical changes to the digestive system to help a patient lose weight. Approximately 260,000 bariatric surgeries were performed in the United States in 2021 alone, a number of which were performed in this District using Accused Stapler Products.

39.     Thoracic surgery focuses on treating conditions of the body's thorax (generally, chest) area, including the esophagus, lungs, mediastinum (the area between the lungs), trachea, and diaphragm. Thoracic surgeons treat the following conditions: chest wall tumors. emphysema, pulmonary fibrosis, and other end-stage lung-diseases. Approximately 530,000 general thoracic surgery cases are performed yearly in the U.S., some of which were performed in this District using Accused Stapler Products.

40.    Colorectal surgery includes a range of surgical procedures that can treat conditions affecting the lower digestive tract, ranging from hemorrhoids to diverticulitis to cancer. Many procedures can be performed using minimally invasive laparoscopic techniques. More than 600,000 colon surgeries are performed in the US each year, some of which were performed in this District using Accused Stapler Products.

41.    Ethicon US maintains a facility in Mexico at Calle Durango 2751, Ciudad Juarez, Chihuahua, Mexico for the purpose of "[a]ssembly of finished plastic and metal component parts for minimally invasive surgical products by EES-Juarez, and the manufacturing and packaging of wound closure and medical devices by Ethicon, Inc." *See* Exhibit D at p. 5.

42.    Ethicon ESI maintains a facility in Mexico at Calle Durango 2751, Ciudad Juarez, Chihuahua, Mexico for the purpose of "[a]ssembly of finished plastic and metal component parts for minimally invasive surgical products by EES-Juarez, and the manufacturing and packaging of wound closure and medical devices by Ethicon, Inc." *See* Exhibit D at p. 5.

43.    At least some of the Accused Stapler Products are and/or have been manufactured, assembled and/or packaged by Ethicon in Mexico.

44.    At least some of the Accused Stapler Products manufactured and assembled by Ethicon in Juarez are then imported into the United States. *See* Exhibits E-1 & E-2.

45.    At least some of the Accused Stapler Products are and/or have been imported through ports of entry in this District.

46.    El Paso, Texas is located across the U.S.–Mexico border from Juarez, Mexico.

47.    Ethicon ESI owns, leases and/or operates a facility in this District.

48.    Ethicon ESI owns, leases and/or operates a facility in this District with an address at 425 Pan American Dr., El Paso Texas 79907.

49.     ECHELON™+ Powered  Staplers are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

50.     ECHELON™+ Powered  Staplers are and/or have been imported into the United States using ports of entry in this District.

51.     ECHELON™+ Powered  Staplers are and/or have been warehoused in this District.

52.     ECHELON™+ Powered  Staplers are and/or have been sold in this District.

53.     ECHELON™+ Powered  Staplers are and/or have been used or operated in this District.

54.     ECHELON™+ Powered  Staplers are and/or have been sold in this Division.

55.     ECHELON™+ Powered  Staplers are and/or have been used or operated in this Division.

56.     ECHELON FLEX™ Powered Vascular Staplers with Advanced Placement Tip are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

57.     ECHELON FLEX™ Powered Vascular Staplers with Advanced Placement are and/or have been imported into the United States using ports of entry in this District.

58.     ECHELON FLEX™ Powered Vascular Staplers with Advanced Placement Tip are and/or have been warehoused in this District.

59.     ECHELON FLEX™ Powered Vascular Staplers with Advanced Placement Tip are and/or have been sold in this District.

60.     ECHELON FLEX™ Powered Vascular Staplers with Advanced Placement Tip are and/or have been used or operated in this District.

61.    ECHELON FLEX™ Powered Vascular Staplers with Advanced Placement are and/or have been sold in this Division.

62.    ECHELON FLEX™ Powered Vascular Staplers with Advanced Placement are and/or have been used or operated in this Division.

63.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

64.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been imported into the United States using ports of entry in this District.

65.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been warehoused in this District.

66.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been sold in this District.

67.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been used or operated in this District.

68.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been sold in this Division.

69.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been used or operated in this Division.

70.    ENDOPATH™ ETS 45mm Articulating Linear Cutters are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

71.    ENDOPATH™ ETS 45mm Articulating Linear Cutters are and/or have been imported into the United States using ports of entry in this District.

72.    ENDOPATH™ ETS 45mm Articulating Linear Cutters are and/or have been warehoused in this District.

73.    ENDOPATH™ ETS 45mm Articulating Linear Cutters are and/or have been sold in this District.

74.    ENDOPATH™ ETS 45mm Articulating Linear Cutters are and/or have been used or operated in this District.

75.    ENDOPATH™ ETS 45mm Articulating Linear Cutters are and/or have been sold in this Division.

76.    ENDOPATH™ ETS 45mm Articulating Linear Cutters are and/or have been used or operated in this Division.

77.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

78.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been imported into the United States using ports of entry in this District.

79.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been warehoused in this District.

80.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been sold in this District.

81.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been used or operated in this District.

82.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been sold in this Division.

83.    ECHELON FLEX™ ENDOPATH™ Staplers (45mm and/or 60mm) are and/or have been used or operated in this Division.

84.    Reload Cartridges are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

85.    The staple Reload Cartridges are and/or have been manufactured by a third-party and delivered to Ethicon's Juarez manufacturing facility to be loaded with staples and assembled as part of the final Accused Stapler Products.

86.    Reload Cartridges are and/or have been imported into the United States using ports of entry in this District.

87.    Reload Cartridges are and/or have been warehoused in this District.

88.    Reload Cartridges are and/or have been sold in this District.

89.    Reload Cartridges are and/or have been used or operated in this District.

90.    Reload Cartridges are and/or have been sold in this Division.

91.    Reload Cartridges are and/or have been used or operated in this Division

92.    Ethicon US has or has had an Associate Sales Representative located in Austin, Texas. *See* Exhibit F. Ethicon's Associate Sales Representative resides in this District. Ethicon's Associate Sales Representative is tasked with, among other things, selling and offering to sell Accused Stapler Products in this District. Ethicon's Associate Sales Representative is tasked with, among other things, selling and offering to sell Accused Sealer Products in this District.

93.    With respect to the '892 Patent and the '033 Patent, Ethicon makes, uses, sells, offers for sale, and/or imports surgical sealers including ENSEAL G2 Articulating Tissue Sealer, ENSEAL G2 Curved Tissue Sealer, ENSEAL G2 Straight Tissue Sealer.  These products and those that operate in a substantially similar manner shall be referred to as the "Accused Sealer Products."

94.     Together, the "Accused Stapler Products" and the "Accused Sealer Products" are the "Accused Products."

95.     The Accused Products are covered or described in one or more claims of the Asserted Patents.

96.     ENSEAL G2 Articulating Tissue Sealers are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

97.     ENSEAL G2 Articulating Tissue Sealers are and/or have been imported into the United States using ports of entry in this District.

98.     ENSEAL G2 Articulating Tissue Sealers are and/or have been warehoused in this District.

99.     ENSEAL G2 Articulating Tissue Sealers are and/or have been sold in this District.

100.    ENSEAL G2 Articulating Tissue Sealers are and/or have been used or operated in this District.

101.    ENSEAL G2 Articulating Tissue Sealers are and/or have been sold in this Division.

102.    ENSEAL G2 Articulating Tissue Sealers are and/or have been used or operated in this Division.

103.    ENSEAL G2 Curved Tissue Sealers are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

104.    ENSEAL G2 Curved Tissue Sealers are and/or have been imported into the United States using ports of entry in this District.

105.    ENSEAL G2 Curved Tissue Sealers are and/or have been warehoused in this District.

106.    ENSEAL G2 Curved Tissue Sealers are and/or have been sold in this District.

14

107.   ENSEAL G2 Curved Tissue Sealers are and/or have been used or operated in this District.

108.   ENSEAL G2 Curved Tissue Sealers are and/or have been sold in this Division.

109.   ENSEAL G2 Curved Tissue Sealers are and/or have been used or operated in this Division.

110.   ENSEAL G2 Straight Tissue Sealers are and/or have been manufactured, assembled and/or packaged at Ethicon's facilities in Juarez, Mexico.

111.   ENSEAL G2 Straight Tissue Sealers are and/or have been imported into the United States using ports of entry in this District.

112.   ENSEAL G2 Straight Tissue Sealers are and/or have been used or operated in this District.

113.   ENSEAL G2 Straight Tissue Sealers are and/or have been warehoused in this District.

114.   ENSEAL G2 Straight Tissue Sealers are and/or have been sold in this District.

115.   ENSEAL G2 Straight Tissue Sealers are and/or have been sold in this Division.

116.   ENSEAL G2 Straight Tissue Sealers are and/or have been used or operated in this Division.

## VII.   NOTICE OF INFRINGEMENT TO ETHICON

117.   On September 13, 2016, Rex Medical provided notice of the '650 Patent to Defendants ("September 2016 Notice") (Exhibit G). On September 13, 2016, James Brogan at Cooley LLP, representing Rex Medical L.P., sent a letter to Dorothy Corbett, the Vice President of Law and Senior Counsel for Ethicon Endo-Surgery, providing Defendants notice of the '650

Patent. The September 2016 Notice included a statement that the portfolio would "provide significant IP protection for Ethicon's Echelon™ and Endopath™ product platforms."

118.    On or around December 3, 2019, Rex Medical presented a detailed demonstration, including an accompanying PowerPoint, to Ethicon at its facility in Cincinnati, Ohio (the "2019 Presentation") (Exhibit H). The attendees on the Rex Medical side were Erik Milch (outside counsel) and Lindsay Carter (President). On the Ethicon side the attendees were Phil Krekel (Senior Director, New Business Development), Dean Garner (Assistant General Counsel – Patents) and Hilary Reinhardt (Senior Patent Counsel). By way of the 2019 Presentation, Rex Medical provided notice to Ethicon of both the '650 Patent and '892 Patent (among other patents) and a detailed claim analysis demonstrating infringement by Ethicon's products. Further, in the 2019 Presentation, Rex Medical provided notice to Ethicon of patent application no. 16/185,506, which ultimately issued as the '033 Patent.

119.    On July 1, 2020, Rex Medical provided notice of the '033 Patent to Defendants ("July 2020 Notice") (Exhibit I). On July 1, 2020, Erik Milch at Cooley LLP, representing Rex Medical L.P., emailed Phil Krekel (Senior Director, New Business Development for Ethicon Endo-Surgery), Dean Garner (Assistant General Counsel—Patents for Ethicon Endo-Surgery) and Hilary Reinhardt (Senior Patent Counsel) providing Defendants notice of the '033 Patent and attaching the patent itself. Mr. Milch, Mr. Krekel, Mr. Garner and Ms. Reinhardt had been involved in ongoing communications prior to the July 1, 2020 Notice. In the July 2020 Notice email, Mr. Milch states:

> I write to follow up on our past conversations to let you know that Rex Medical added one additional patent to its portfolio (U.S. Patent No. 10,675,033, copy attached). As we discussed when we last spoke, Covidien has taken a license to the Stapling Systems Portfolio, resolving the parties' litigation, and the district court issued its claim construction order in the Intuitive case siding with Rex Medical on all claim terms. Rex Medical continues to believe that Ethicon would benefit from

a license to the Stapling Systems Portfolio.  To that end, I will be following up shortly with a formal license offer.

Ex. 1.

120.    On July 2, 2020, Mr. Krekel acknowledged receipt of the July 2020 Notice. On April 9, 2021, Mr. Milch continued to follow up via email and stated: "I'm reaching back out because I think it would be beneficial to continue our discussions.  As you may have seen, the PTAB issued a Final Written Decision in IPR 2020-00152 (U.S. Patent 9,439,650), confirming the patentability of claims 6-8, 19 and 21.  A copy of the Decision is attached."  Notwithstanding these efforts to engage, Ethicon responded that it was "not prepared to respond to your offer."

## VIII.   PATENT INFRINGEMENT

### COUNT I – INFRINGEMENT OF THE '650 PATENT

121.    Rex Medical realleges and incorporates by reference the allegations set forth herein.

122.    Ethicon has directly and indirectly infringed, literally and/or under the doctrine of equivalents, at least claim 6 of the '650 Patent by making, using, selling, importing, offering for sale, and/or providing and causing to be used the Accused Stapler Products.

123.    Claim 6 of the '650 Patent is a claim that is dependent on claim 5, which is dependent on claim 4. Claim 4 of the '650 Patent claims an apparatus for stapling tissue comprising:

> a first jaw and a second jaw, at least one of the first jaw and the second jaw being movable with respect to the other of the first jaw and the second jaw from a first configuration in which the first jaw and the second jaw are separated from each other at a first distance to receive tissue and a second configuration in which the first jaw and the second jaw are clamped together at a second distance to hold tissue there between for stapling,

> a staple carrying portion of the first jaw defining slots through which staples are configured to pass;

> an anvil surface defined on the second jaw opposing the first jaw;

17

at least one of a gear and a cable operatively coupled to at least one of the first jaw and the second jaw and configured to move at least one of the first jaw and the second jaw from the first configuration to the second configuration such that the first jaw and the second jaw are in alignment; and

a staple pusher configured to cause a staple to move from a first position at least partially within the staple carrying portion to a second position entirely outside the staple carrying portion, the second distance and the alignment being maintained by a beam configured to engage the first and second jaws from within the first and second jaws while tissue is stapled from a proximal location to a distal location.

124.    Claim 5 of the '650 Patent claims:

The apparatus of claim 4, wherein the beam is configured to engage the first and second jaws one of entirely or substantially from therewithin to maintain the second distance and the alignment.

125.    Claim 6 of the '650 Patent—a claim that is asserted in this case—further recites:

The apparatus of claim 5, wherein the beam comprises an upper portion and a lower portion and a web coupled between the upper portion and the lower portion, at least one of the lower portion or the upper portion configured to cause the staple pusher to move a staple as the beam moves from a proximal location to a distal location, the upper portion and the lower portion configured to cooperatively engage the first jaw and the second jaw to align the slots with a staple forming portion on the anvil surface.

126.    The Accused Stapler Products contain functionality or features covered by or described by each of the above limitations.

127.    The Accused Stapler Products are apparatuses for stapling tissue.

128.    The Accused Stapler Products have two jaws at least one of which is movable in relation to the other and can consequently be moved from a first configuration where the jaws are separated from each other at a first distance to receive tissue, to a second configuration where the jaws are clamped together at a second distance to hold tissue for stapling. Illustrations of the two jaws and their movements are below.

18

 

https://www.youtube.com/watch?v=Bz8AVHJR XjA&t=2s

https://www.youtube.com/watch?v=Bz8A VHJRXjA

129.    The Accused Stapler Products have a staple carrying portion of the first jaw with slots through which the staples are configured to pass. The Accused Stapler Products' "Reload channel" holds the staples and has slots that the staples pass through.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

130.    The Accused Stapler Products have an anvil surface defined on the second jaw opposing the first jaw.

131.    The Accused Stapler Products have at least one of a gear and a cable operatively coupled to at least one of the jaws and configured to move at least one jaw from the first configuration to the second configuration such that the jaws are in alignment.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

132.    The Accused Stapler Products have a staple pusher that moves the staples from one position within the staple carrying portion, to a second position entirely outside the staple carrying portion. Illustrations of the pusher are below.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

133.    The Accused Stapler Products maintain the second distance and alignment of the jaws (*i.e.*, when the jaws are close together)—while the staples are pushed out—by virtue of a

beam configured to engage the first and second jaws from within the jaws while tissue is stapled from a proximal to a distal location.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

134.    The Accused Stapler Products' beam is configured to engage the two jaws entirely or substantially from within the jaws to maintain the second distance and alignment (*i.e.*, when the jaws are close together). An illustration of the beam is below.



135.    The beam comprises an upper portion and a lower portion, and a web coupled between the upper and lower portion.

136.    At least one of the beam's upper or lower portion is configured to cause the stapler pusher to move a staple as the beam moves from a proximal location to a distal location.

21

137.    The beam's upper portion and lower portion are configured to cooperatively engage the two jaws to align the slots with a staple forming portion on the anvil surface.

138.    The Accused Products also contain each of the claim limitations required by additional claims of the '650 Patent.

139.    Ethicon had knowledge of the '650 Patent at least as early as September 13, 2016, knowledge that its customer's actions constituted infringement, and knowledge of Rex Medical's direct and indirect infringement claims. As such, Ethicon is liable for inducing infringement under 35 U.S.C. § 271(b) and for contributory infringement under 35 U.S.C. § 271(c) based on its knowledge and actions.

140.    Ethicon has induced others to infringe at least one claim of the '650 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent including, but not limited to, Ethicon's partners, clients, customers, and end users, whose use of the Accused Stapler Products constitutes direct infringement of at least one claim of the '650 Patent.    Alternatively, Defendants have demonstrated willful blindness to the consequences of their inducing acts and are therefore liable under Section 271(b).

141.    In particular, Ethicon's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Accused Stapler Products and providing instruction materials, training, and services regarding the Accused Stapler Products, all with knowledge of its infringement.

142.    Ethicon is liable for contributory infringement of the '650 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Stapler Products to be especially made or adapted for use to infringe the '650 Patent. The Accused Stapler Products are

a material component for use in practicing the '650 Patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

143.    As a consequence of Ethicon's direct and indirect infringement of the '650 Patent, both literal and/or under the doctrine of equivalents, Rex Medical has been damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

144.    Due to Ethicon's infringement of the '650 Patent, Rex Medical has suffered damages as a consequence of Ethicon's infringing conduct.

<u>COUNT II – INFRINGEMENT OF THE '892 PATENT</u>

145.    Rex Medical realleges and incorporates by reference the allegations set forth herein.

146.    Ethicon has directly and indirectly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '892 Patent by making, using, selling, importing, offering for sale, and/or providing and causing to be used the Accused Stapler Products.

147.    Claim 1 of the '892 Patent is an independent claim.  It provides:

1.    An apparatus, comprising:

a head having a first jaw and a second jaw, at least one of the first jaw and the second jaw being movable with respect to the other of the first jaw and the second jaw from a first configuration in which the first jaw and the second jaw are spaced apart at a first distance and a second configuration in which the first jaw and the second jaw are spaced apart at a second distance, a stapling assembly of the first jaw having slots through which staples are configured to be passed in one or more rows extending from a proximal end of the first jaw to a distal end of the first jaw, and an anvil surface of the second jaw being configured to form a staple;

a first adjustment assembly configured for gross movement of the first jaw or the second jaw;

a second adjustment assembly including a beam configured for fine movement of the first jaw or the second jaw to maintain a fixed distance there between, wherein the beam is operatively coupled to a pusher and includes a central web portion connecting an upper beam portion and a lower beam portion, the central web portion including a cutting blade which is generally more

23

distal than at least one of a trailing edge of the upper beam portion and a trailing edge of the lower beam portion, and the pusher being configured to cause a staple pusher to move for firing as the beam moves distally;

a handle having one or more actuators configured to move at least one of the first jaw and the second jaw from the first configuration to the second configuration, and to actuate the stapling assembly; and

a shaft coupling the handle to the head; wherein

at least one of the upper beam portion and the lower beam portion is a generally flat plate orthogonally attached to an end of the central web portion and is configured to engage the first jaw or the second jaw entirely from within the first jaw or the second jaw for clamping and alignment; and

the pusher and the central web portion are coplanar with a channel defined in a tissue contacting surface of each of the first jaw and the second jaw when the beam moves distally.

148.    The Accused Stapler Products contain functionality or features covered by or described by each of the above limitations.

149.    The Accused Stapler Products are apparatuses for stapling tissue.

150.    The Accused Stapler Products contain a head that has a first jaw and a second jaw movable with respect to the other of the first jaw and the second jaw.






https://www.youtube.com/watch?v=Bz8AVHJRXjA&t=2s

https://www.youtube.com/watch?v=Bz8AVHJRXjA

151.    The Accused Stapler Products contain a stapling assembly of the first jaw.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

152.    The Accused Stapler Products have slots through which the staples are passed in one or more rows.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

25

153.    The Accused Stapler Products have an anvil surface of the second jaw configured to form a staple.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

154.    The Accused Stapler Products have an assembly including a beam configured for fine movement of the first jaw or the second jaw to maintain a fixed distance. The beam includes a central web portion that includes a cutting blade.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

**Alignment during firing**

The 3-point gap control mechanism of the ECHELON FLEX™ platform ensures a uniform distance between the anvil and cartridge surfaces during firing. This is achieved by maintaining 3 separate points of alignment as the knife travels from the proximal end to the distal tip.



http://exhibitors.globalcastmd.com/files/download/558433539fe8608

155.    The beam is coupled to the pusher.



https://www.youtube.com/watch?v=Bz8AVHJRXjA&t=2s

156.    The Accused Stapler Products have a handle that has actuators to actuate the stapling assembly by moving the jaws.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

157.    The Accused Stapler Products have a shaft coupling the handle to the head.



https://www.ethicon.com/na/products/surgical-stapling/

158.    The Accused Stapler Products have an upper beam portion and a lower beam portion that is a generally flat plate orthogonally attached to an end of the central web portion and is configured to engage the first jaw or the second jaw entirely from within the first jaw or the second jaw.



https://www.youtube.com/watch?v=HO2Spay43e0



https://www.youtube.com/watch?v=Bz8AVHJRXjA&t=2s

159.    Ethicon has directly and indirectly infringed, literally and/or under the doctrine of equivalents, at least claim 5 of the '892 Patent by making, using, selling, importing, offering for sale, and/or providing and causing to be used the Accused Sealer Products.

160.    Claim 5 of the '892 Patent is an independent claim, and provides as follows:

**5.**    An apparatus, comprising:

a head portion having a first jaw and a second jaw configured to move between a first configuration for receiving tissue and a second configuration for sealing tissue;

a beam having an upper beam portion and a lower beam portion connected by a central web portion having a leading edge including a cutting blade that is more distal than at least one of a trailing edge of the upper beam portion and

29

a trailing edge of the lower beam portion, wherein the upper beam portion and the lower beam portion are configured to clamp and align the first jaw and the second jaw at least partially from within the first jaw and the second jaw when in the second configuration as the central web portion moves distally along a channel defined in a tissue contacting surface of each of the first jaw and the second jaw;

a pusher operatively coupled to the beam and configured to move the beam distally;

a control handle configured to actuate receiving, clamping and sealing of tissue; and

a shaft coupling the control handle to the head portion;

wherein at least one of the upper beam portion and the lower beam portion is orthogonally attached to an end of the central web portion,



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

and the pusher is coplanar with the central web portion and the channel.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

161.    The Accused Sealer Products contain functionality or features covered by or described by each of the above limitations.

162.    The Accused Sealer Products have a head portion having a first jaw and a second jaw configured to move between a first configuration for receiving tissue and a second configuration for sealing tissue.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

163.    The Accused Sealer Products have a beam having an upper beam portion and a lower beam portion connected by a central web portion having a leading edge including a cutting blade that is more distal than at least one of a trailing edge of the upper beam portion and a trailing edge of the lower beam portion. The upper beam portion and the lower beam portion are configured to clamp and align the first jaw and the second jaw at least partially from within the first jaw and the second jaw when in the second configuration as the central web portion moves distally along a channel defined in a tissue contacting surface of each of the first jaw and the second jaw.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

164.    The Accused Sealer Products have a pusher operatively coupled to the beam and configured to move the beam distally.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

165.    The Accused Sealer Products have a control handle configured to actuate receiving, clamping and sealing of tissue.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

166.    The Accused Sealer Products have a shaft coupling the control handle to the head portion.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

167.    The Accused Sealer Products have at least one of the upper beam portion and the lower beam portion is orthogonally attached to an end of the central web portion, and the pusher is coplanar with the central web portion and the channel.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

168.    The Accused Products also contain each of the claim limitations required by additional claims of the '892 Patent.

169.    Ethicon had knowledge of the '892 Patent at least as early as December 3, 2019, knowledge that its customer's actions constituted infringement, and knowledge of Rex Medical's direct and indirect infringement claims. As such, Ethicon is liable for inducing infringement under 35 U.S.C. § 271(b) and for contributory infringement under 35 U.S.C. § 271(c) based on its knowledge and actions.

170.    Ethicon has induced others to infringe at least one claim of the '892 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent including, but not limited to, Ethicon's partners, clients, customers, and end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '892 Patent. Alternatively, Defendants have demonstrated willful blindness to the consequences of their inducing acts and are therefore liable under Section 271(b).

171.    In particular, Ethicon's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Accused Products and

providing instruction materials, training, and services regarding the Accused Products, all with knowledge of its infringement.

172.    Ethicon is liable for contributory infringement of the '892 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Products to be especially made or adapted for use to infringe the '892 Patent. The Accused Products are a material component for use in practicing the '892 Patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

173.    As a consequence of each of Ethicon's direct and indirect infringement, both literal and/or under the doctrine of equivalents, of the '892 Patent, Rex Medical has been damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

174.    Due to Ethicon's infringement of the '892 Patent, Rex Medical has suffered damages as a consequence of Ethicon's infringing conduct.

<u>COUNT III – INFRINGEMENT OF THE '033 PATENT</u>

175.    Rex Medical realleges and incorporates by reference the allegations set forth herein.

176.    Ethicon has directly and indirectly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '033 Patent by making, using, selling, importing, offering for sale, and/or providing and causing to be used the Accused Stapler Products.

177.    Claim 1 of the '033 Patent is an independent claim.

1. An apparatus, comprising:

a first jaw and a second jaw, at least one of the first jaw and the second jaw being movable with respect to the other of the first jaw and the second jaw from a first configuration in which the first jaw and the second jaw are separated from each other at a first distance to receive tissue therebetween to a second configuration in which the first jaw and the second jaw are clamped together at a second distance to hold the tissue there between,

the first jaw including a staple carrying portion defining slots through which staples
are configured to pass to staple the tissue,

the second jaw including an anvil surface opposing a surface of the first jaw;

a beam including an upper beam portion and a lower beam portion connected by a
central web portion, the central web portion including a leading edge being
more distal than at least one of a trailing edge of the upper beam portion and
a trailing edge of the lower beam portion;

a staple pusher configured to move a staple from a first position within the staple
carrying portion to a second position outside the staple carrying portion to
staple the tissue; and

a linear pusher having a distal end entirely and fixedly coupled to the beam, the
linear pusher configured to move the beam in a distal direction thereby
triggering via the beam the staple pusher to move the staple to staple the
tissue,

the beam configured to engage the first jaw below an outermost surface of the first
jaw and engage the second jaw below an outermost surface of the second
jaw to clamp together the first jaw and the second jaw at the second distance
and align the first jaw relative to the second jaw.

178.    The Accused Stapler Products contain functionality or features covered by or

described by each of the above limitations.

179.    The Accused Stapler Products are apparatuses for stapling tissue.

180.    The Accused Stapler Products contain a head that has a first jaw and a second jaw

movable with respect to the other of the first jaw and the second jaw.

 

https://www.youtube.com/watch?v=Bz8AVHJR
XjA&t=2s

https://www.youtube.com/watch?v=Bz8A
VHJRXjA

181.    The Accused Stapler Products contain a stapling carrying portion defining slots through which staples are able to pass to staple tissue.



https://www.youtube.com/watch?v=Bz8AVHJRXjA



https://www.youtube.com/watch?v=Bz8AVHJRXjA

182.    The Accused Stapler Products have an anvil surface of the second jaw configured to form a staple.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

183.    The Accused Stapler Products have a beam with an upper and lower portion connected by a central web portion.



https://www.youtube.com/watch?v=Bz8AVHJRXjA

**Alignment during firing**

The 3-point gap control mechanism of the ECHELON FLEX™ platform ensures a uniform distance between the anvil and cartridge surfaces during firing. This is achieved by maintaining 3 separate points of alignment as the knife travels from the proximal end to the distal tip.



http://exhibitors.globalcastmd.com/files/download/558433539fe8608

184.    The beam is coupled to a staple pusher that moves a staple from within the staple carrying portion to outside the staple carrying portion to staple the tissue. A linear pusher has an end coupled to the beam which moves the beam in a distal direction triggering via the beam the staple pusher to move the staple to staple the tissue.



https://www.youtube.com/watch?v=Bz8AVHJRXjA&t=2s

185.    The Accused Stapler Products have a beam to engage the first jaw below an outermost surface of the first jaw and engage the second jaw below an outermost surface of the second jaw to clamp together the jaws.

41



https://www.youtube.com/watch?v=HO2Spay43e0



https://www.youtube.com/watch?v=Bz8AVHJRXjA&t=2s

186.    Ethicon has directly and indirectly infringed, literally and/or under the doctrine of equivalents, at least claim 19 of the '033 Patent by making, using, selling, importing, offering for sale, and/or providing and causing to be used the Accused Sealer Products.

187.    Claim 19 of the '033 Patent is an independent claim.  It provides:

19. An apparatus, comprising:

a first jaw including a first tissue contacting surface;

a second jaw including a second tissue contacting surface, at least one of the first jaw and the second jaw being movable toward the other of the first jaw and the second jaw to clamp tissue between the first tissue contacting surface and the second tissue contacting surface;

an I-beam configured to move along a length of the first jaw and the second jaw, the I-beam including:

a first end portion;

a second end portion; and

a central portion connecting the first end portion to the second end portion, the first end portion and the second end portion being orthogonal to the central portion, at least one of the first end portion and the second end portion configured to engage at least one of the first jaw and the second jaw entirely from within an outermost surface of the first jaw and an outermost surface of the second jaw; and

a linear pusher having a distal end fixedly coupled to the I-beam and extending proximally from the I-beam, the linear pusher configured to move the I-beam in a distal direction along the length of the first jaw and the second jaw such that:

the I-beam moves the at least one of the first jaw and the second jaw toward the other to clamp the tissue between the first tissue contacting surface and the second tissue contacting surface; and

the I-beam triggers sealing of the tissue.

188.    The Accused Sealer Products satisfy each of the above limitations.

189.    The Accused Sealer Products have a second jaw including a second tissue contacting surface. At least one of the first jaw and the second jaw is movable toward the other of the first jaw and the second jaw to clamp tissue between the first tissue contacting surface and the second tissue contacting surface.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

190.    The Accused Sealer Products have an I-beam configured to move along a length of the first jaw and the second jaw. The I-beam has a first end portion, a second end portion and a central portion connecting the first end portion to the second end portion, the first end portion and the second end portion being orthogonal to the central portion, at least one of the first end portion and the second end portion engages at least one of the first jaw and the second jaw entirely from within an outermost surface of the first jaw and an outermost surface of the second jaw.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

191.    The Accused Sealer Products have a linear pusher having a distal end fixedly coupled to the I-beam and extending proximally from the I-beam, the linear pusher configured to move the I-beam in a distal direction along the length of the first jaw and the second jaw such that:



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

192.    The I-beam moves the at least one of the first jaw and the second jaw toward the other to clamp the tissue between the first tissue contacting surface and the second tissue contacting surface and the I-beam triggers sealing of the tissue.



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer



https://www.jnjmedtech.com/en-US/product/enseal-g2-straight-tissue-sealer

193.    The Accused Products contain functionality or features that are covered or described by each of the claim limitations required by additional claims of the '033 Patent.

194.    Ethicon had knowledge of the '033 Patent at least as early as July 1, 2020, knowledge that its customer's actions constituted infringement, and knowledge of Rex Medical's

direct and indirect infringement claims. As such, Ethicon is liable for inducing infringement under 35 U.S.C. § 271(b) and for contributory infringement under 35 U.S.C. § 271(c) based on its knowledge and actions.

195.    Ethicon has induced others to infringe at least one claim of the '033 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent including, but not limited to, Ethicon's partners, clients, customers, and end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '033 Patent. Alternatively, Defendants have demonstrated willful blindness to the consequences of their inducing acts are and therefore liable under Section 271(b).

196.    In particular, Ethicon's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Accused Products and providing instruction materials, training, and services regarding the Accused Products, all with knowledge of its infringement.

197.    Ethicon is liable for contributory infringement of the '033 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Products to be especially made or adapted for use to infringe the '033 Patent. The Accused Products are a material component for use in practicing the '033 Patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

198.    As a consequence of each of Ethicon's direct and indirect infringement, both literal and/or under the doctrine of equivalents, of the '033 Patent, Rex Medical has been damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

199.    Due to Ethicon's infringement of the '033 Patent, Rex Medical has suffered damages as a consequence of Ethicon's infringing conduct.

## IX.    WILLFUL INFRINGEMENT

200.    By virtue of the September 16 Notice, the 2019 Presentation and the July 2020 Notice, as well as other communications and correspondence between Rex Medical and Ethicon, Ethicon—despite being notified of the Asserted Patents—nonetheless continued to make, use, sell and/or import Accused Products, to induce others to engage in such conduct, and/or to contribute to others engaging in such conduct despite knowing that its actions constituted infringement of a valid patent.

201.    At least since the date upon which Ethicon learned of each of the Asserted Patents and its infringement of those Patents, Ethicon has willfully infringed by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the Asserted Patents.

202.    Accordingly, Ethicon acted egregiously and/or knowingly or intentionally when it infringed the Asserted Patents.

203.    Rex Medical seeks enhanced damages pursuant to 35 U.S.C. §284.

## X.    JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Rex Medical demands a trial by jury on all triable issues.

## XI.    PRAYER FOR RELIEF

WHEREFORE, if Plaintiff Rex Medical is unsuccessful in securing a reasonable royalty prior to service of this Complaint, Plaintiff Rex Medical demands judgment for itself and against Ethicon as follows:

A.    An adjudication that Defendants have infringed one or more claims of each of the '650 Patent, the '892 Patent and the'033 Patent;

B.    An award of damages to be paid by Defendants adequate to compensate Rex Medical for Defendants' past infringement of the Asserted Patents, including pre-judgment and post-judgment interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts presented at trial as well as those acts not presented at trial;

C.    An adjudication that Defendants' infringement has been willful and an award of enhanced damages;

D.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff Rex Medical's reasonable attorneys' fees; and

E.    An award to Rex Medical of such further relief at law or in equity as the Court deems just and proper.

DATED: October 18, 2024                      Respectfully submitted,

_/s/ Andrew G. DiNovo_
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Adam G. Price
Texas State Bar No. 24027750
aprice@dinovoprice.com
Christopher V. Goodpastor
Texas State Bar No. 00791991
cgoodpastor@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile: (512) 727-6691

Michael W. Shore
Texas State Bar No. 18294915
**THE SHORE FIRM LLP**
5466 Milton Street, Suite 423
Dallas, TX 75206
Telephone: (214) 593-9110
Facsimile: (214) 593-9111

COUNSEL FOR PLAINTIFF
REX MEDICAL, L.P.